FRANCISCO AROCENA, demandante y apelante, *v.* HIRAM GÓMEZ, demandado y apelado.

No. 3939.—*Visto:* Diciembre 3, 1926. *Resuelto:* Abril 29, 1927.

1. CARRETERAS *(Highways)*—REGLAMENTACIÓN Y USO PARA EL TRÁNSITO—USO DE LA CARRETERA Y LEY DEL CAMINO — CUIDADO REQUERIDO DE AQUELLOS QUE LA USAN—EN GENERAL—CRUCE DE LA CARRETERA—NEGLIGENCIA.—Uno no está justificado en salir a una carretera pública, la que tiene que cruzar para coger su derecha, si ve venir un automóvil que ocupando su derecha, camina a una velocidad excesiva.

2. CARRETERAS *(Highways)*—REGLAMENTACIÓN Y USO PARA EL TRÁNSITO—USO DE LA CARRETERA Y LA LEY DEL CAMINO—ACCIONES POR DAÑOS—NEGLIGENCIA CONTRIBUTORIA—CUIDADO CONTRA LA NEGLIGENCIA DE OTRO.—Cuando uno que guía un carro a velocidad en una carretera pública ve a otro salir a la carretera a cruzarla para tratar de coger su derecha que aquél le tiene ocupada y, no obstante, se mantiene caminando en dirección opuesta a éste sin de-

tener su carro para evitar un choque, él es culpable de negligencia contributoria y no tiene derecho a recobrar por los daños sufridos con motivo del accidente.

Sentencia de *Charles E. Foote,* J. (Mayagüez), desestimando la demanda y declarando con lugar la contrademanda, con costas. *Confirmada en parte y en parte revocada, sin costas.*

*Fernando B. Fornaris,* abogado del apelante; *José Sabater,* abogado del apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

Francisco Arocena demandó a Hiram Gómez reclamándole los desperfectos que sufrió su automóvil marca "Buick", de dos asientos, provenientes de un choque que tuvo con el automóvil del demandado, marca "Cadillac", y manejados por las propias partes, en ocasión en que el demandado caminaba por el trozo de carretera que entra en la zona urbana de Arecibo, en dirección a Mayagüez, y el demandante salía de tomar gasolina en un puesto de la West India Oil Co., y de cuyo choque ambos vehículos resultaron con averías.

El demandante alegó substancialmente que el demandado manejaba un automóvil, en el momento de chocar, de una manera negligente: 1º, porque caminaba por la izquierda del camino; 2º, porque corría a velocidad excesiva, considerando el sitio en que ocurrió el accidente, y 3º, por no dar señal de aviso o alarma.

El demandado negó estas alegaciones y estableció a su vez contrademanda alegando que él venía por su derecha, a una velocidad no más de 20 millas, dando señal de aviso, y que el choque se debió única y exclusivamente a la negligencia del demandante por haber salido súbita e inesperadamente del puesto de gasolina con una velocidad excesiva a tomar la carretera en momentos en que pasaba el demandado.

Unas fotografías fueron presentadas como prueba para mostrar el sitio en que ocurrió el suceso y la corte, después de oir prueba testifical de una y otra parte, declaró sin lugar la demanda y con lugar la contrademanda. La opinión de

la corte inferior es breve y el hecho esencial del suceso que
sienta probado, lo expresa así:

"1o.,—Que el día 23 de abril de 1924, y en ocasión en que el
demandado y contrademandante Hiram Gómez venía viajando con
su familia en su automóvil marca Cadillac por la carretera de
Utuado a Arecibo, procedente de San Juan para Mayagüez, por
su derecha y a una velocidad, moderada salió inesperadamente del de-
pósito de gasolina de la West India, que está situado al lado derecho de
la carretera de Utuado a Arecibo, el demandante y contrademandado
Francisco Arocena, en su automóvil Buick a velocidad excesiva,
guiado por él mismo y lo lanzó sobre el lado derecho del automóvil
Cadillac de Hiram Gómez sin que éste lo pudiera evitar.

    *       *       *       *       *       *       *

La corte, sin duda, se ha fundado para llegar a esa con-
clusión en la prueba testifical del demandado. La prueba
del demandante consistió en su propia declaración, dos
testigos, empleados de la West India Oil Co., y otro, agente
de la Texas Oil Co. Estos testigos presenciales del accidente
tienden a establecer la teoría del demandante, por lo menos
en aquella parte en que se alega que el demandante al tratar
de coger su derecha en su dirección a Utuado se encontró
que venía ocupada por el demandado, quien manteniéndose
en la misma caminaba en dirección opuesta y sin que detu-
viera su carro para evitar el choque. La declaración de
Arocena dice en parte:

"Yo estaba en Arecibo y salía para mi casa, tomé gasolina en la
West India, cuando salía de la West India él venía de Utuado para
Arecibo. Yo salía de la West India, ya estaba ya en segunda marcha,
él venía hacia Utuado para Arecibo y allí me dió parado, casi parado.
P.—¿Por dónde le dió? R.—Me dió de frente. P.—¿Ya Ud. había
tomado su derecha o no? R.—Estaba en toda mi derecha. P.—¿Por
dónde venía el carro de Gómez? Por toda su izquierda. P.—¿Venía
despacio? R.—A una velocidad terrible venía. P.—¿Que marca de
carro manejaba él? R.—Cadillac. P.—¿Tocó bocina o klaxon? R.
—No tocó nada. P.—¿El golpe fué violento o fué un choque leve?
R.—Fué un golpe terrible, que mi carro desde luego mucho más sen-
cillo que el de él, se rompió las vancas de mi motor y no bastó con

eso, todavía lo reculó, que él como no dió frenos ni hizo nada, todo con los frenos metidos y me echó para atrás con mi carro.''

Gregorio Saavedra, empleado de la West India Oil Co., en cuanto al suceso mismo, dijo así:

''Pues a las cuatro de la tarde poco más o menos, llegó el señor Francisco Arocena a tomar gasolina al depósito de la West India personalmente, se la despaché yo, luego me quedé en la bomba que queda en la mano izquierda de la salida del señor Arocena, salió hacia su derecha, cuando cogió posición en su derecha venía el señor guiando, guiando de San Juan por su izquierda y el señor Francisco Arocena iba creo frente a la fábrica de hierro y tocó su klaxon, y cuando tomó su derecha entonces venía el señor Hiram Gómez guiando el carro Cadillac, venía por toda la derecha de don Francisco Arocena y le dió. P.—¿Venía despacio? R.—Bastante ligero, muy ligero, entonces el señor se tiró y le dijo, ¿Le ha sucedido algo?, el señor Arocena le dijo, ''No, no me ha pasado nada, solamente me he afectado,'' entonces le dijo, ''Ud. quiere, si se ha dado algún golpe puedo llevarlo al hospital,'' dice ''No me ha pasado nada,'' entonces Hiram Gómez le dijo, ''Bueno señor Arocena, si ha sufrido alguna avería su carro mándelo a reparar y yo pago la avería.''

Los dos restantes testigos del demandante no vieron el preciso momento del choque, pero estaban allí y al ruido del choque de ambos carros, acudieron al sitio y por la posición en que encontraron los carros, confirman que el choque fué estando de frente ambos vehículos y el demandado ocupando la derecha del demandante.

La prueba del demandado consistió en la declaración del demandado y la de su propio *chauffeur,* que venía junto a él, y en el testimonio de un perito mecánico. Un examen de estas declaraciones nos lleva a la conclusión que ellas, en lo sustancial, confirman la teoría del demandante y no sostienen la sentencia, por lo menos en cuanto por ella se declaró con lugar la contrademanda.

Si bien en algunos pasajes de la declaración del demandado y su *chauffeur* se trata de establecer que el automóvil del demandante le dió por el lado derecho al Cadillac, ellos

convienen que el choque fué de frente. Y a esta conclusión llegó el perito-mecánico al examinar el carro para hacer sus reparaciones y determinar el montante de los daños. Si esto es así, es imposible físicamente sostener lo que dice el demandado que el choque ocurrió en el preciso momento de salir el Buick del puesto de gasolina de la West India Oil Co. y estando su carro a metro y medio del borde del camino. El demandado declaró que él venía a una velocidad moderada, como de 10 a 15 millas, (en la contrademanda se habla de 20 millas), que dados los potentes frenos del Cadillac él puede pararlo instantáneamente a una velocidad hasta de 35 millas. Sin embargo, el *chauffeur* sostuvo, aunque trató de contradecirse luego, que él pudo ver al Buick que salía del puesto de gasolina a una distancia de 6 metros y que el demandado no paró el carro porque "no tuvo la ligereza de aguantar." Este mismo testigo también es el que dice que vió el carro Buick que ya estaba fuera de la carretera y que el choque echó al Cadillac hacia las cañas. Estando estas cañas en el lado izquierdo del Cadillac, en la dirección en que marchaba, o sea, el lado que le correspondía tomar al demandante, se hace difícil entender que el choque ocurriera en la derecha del Cadillac estando a un metro y medio de la orilla. Esta distancia parece tan corta para suponer que una masa pequeña como la del Buick de dos asientos pudiera botar el Cadillac, de un peso de 40 quintales a través de la carretera, que tiene un ancho de unos 8 metros.

Las declaraciones del demandado y sus testigos, en lo que hemos referido, hablan por sí mismas, y en lo pertinente ellos dicen:

"(Hiram Gómez) P.—¿Cómo fué que ocurrió el choque cuando Ud. se vino a dar cuenta de ese choque? R.—Cuando el carro Buick del señor Arocena guiado por él mismo chocó con mi carro Cadillac, el cual estaba casi parado puesto que tiene cuatro frenos y no es preciso hacer mucha fuerza para parar sin que deje ninguna clase de marca. P.—¿Por qué lado chocó el carro del señor Francisco Arocena con su carro Cadillac? R.—Con el lado derecho del chassis

de mi carro Cadillac.   P.—Cuando los dos carros se quedaron unidos por el choque, ¿en qué posición estaba su carro? R.—Mi carro estaba recto hacia Mayagüez y el del señor Arocena estaba en un semicírculo que iba a coger su curva para entrar a la derecha de él. . . .   P.—¿El carro del señor Arocena en qué posición quedó? R.—El carro del señor Arocena quedó frente a la parte derecha del chassis de mi carro, puesto que al él dar esa curva pretendió coger su derecha, que fué cuando chocó con mi carro que iba por su derecha, éste es el carro mío y él chocó aquí en este lado. . . R.—Sí, señor, y aquí salió el carro en segunda a mucha velocidad, llegó con él, dióme y allí fué el choque.   P.—¿Que distancia al borde de la carretera? R.—Había prácticamente como metro y medio, yo venía bien por mi derecha. . . . .   P.—¿En qué parte del carro fué que le dió el señor Arocena? R.—La parte derecha del chassis mío, el cual quedó en condiciones pésimas.   (Juez) P.—¿En qué sitio precisamente? R.—Al frente.   (Demandante) P.—¿O sea, por donde está el guarda-lodo derecho delantero? R.—Sí, señor. P.—¿Y al del señor Arocena, por dónde le dió Ud.? R.—Pues él me dió, yo no le dí.   P.—El le dió dice lo mismo. R.—No es lo mismo, por el frente porque él cogía, estaba dando una curva intentando coger su derecha, y me cogió en mi derecha y entonces me dió por ahí.. P.—¿De manera que el carro del señor Arocena le dió a Ud. de frente? R.—Sí, señor.   P.—O sea, para explicar más gráficamente, ésta es; la carretera, éste es Arecibo, y éste es San Juan a Utuado allá está Cambalache, el carro suyo venía de allá por donde está Ud., aquí queda la West India y la Texas? R.—Sí señor, por ahí venía yo. P.—¿Ud. venía como metro o metro y medio de la orilla? R.—De la orilla.   P.—¿Y sin embargo, apesar de venir muy pegado de la orilla el señor Arocena dice Ud. que le dió de frente? R.—El carro salía del depósito de gas dando su curva y me cogió entonces.   P.— ¿De frente? R.—De frente el lado derecho del chassis. . . .   R.— ¿El Cadillac tiene cuatro frenos? R.—Cuatro frenos.   P.—¿Y Ud. al divisar al señor Arocena, yendo a diez millas o quince, que no hay nada más que tocar el freno del Cadillac y para? R.—Exacto. P.—¿No pudo parar? R.—A esa velocidad y a treinta y cinco millas se para instantáneamente, de modo que a esa velocidad quedó parado con una simple presión sobre los frenos.   P.—¿Ud. puso el freno? Ya lo creo, si no desbarato el carro del señor Arocena porque un carro que pesa cuarenta quintales con un carro más liviano como el de Arocena, caminando uno a poca velocidad lo desbarata.''

Nicolás Detrés, *chauffeur* del demandado, dijo:

"P.—¿Ud. vió salir el carro de la West India? R.—Sí, señor. P.—¿A qué distancia de donde iban ustedes Ud. se dió cuenta de que el carro salía? R.—¿A que distancia? P.—Sí, señor, marque aquí en la Corte. R.—¿Es como a qué distancia vimos el carro? P.—Sí, señor. R.—Una distancia muy cerca cuando lo vió? P.—¿Ud. tiene espacio para marcar? R.—Como de aquí a la puerta, poco más o menos. P.—¿De modo que Ud. se dió cuenta a seis metros y Ud. venía delante con el señor Gómez? R.—Sí señor. P.—Ud. se dió cuenta a esa distancia de que el automóvil Buick salía de la West India? R.—Sí, señor. P.—¿Y venía a diez o doce millas? R.—Sí, señor. P.—¿Cuántos frenos tiene ese Cadillac? R.—Tiene cuatro frenos. P.—¿A una velocidad como la que iba para el carro instantáneamente con sólo tocar los frenos? R.—Podía parar. P.—¿Y a veinticinco millas no podía parar instantáneamente también? R.—Pero es medio peligroso dar una parada a veinticinco millas. P.—¿Pero a doce millas o a quince para instantáneamente? R.—Sí, señor. P.—¿Por qué no paró? R.—Porque cuando vimos el carro, que el carro salía con la velocidad que salía el señor Hiram Gómez no tuvo la ligereza de aguantar. P.—¿Luego él no tuvo la ligereza de poder meter los frenos a tiempo, no es eso? R.—Sí, señor. . . . P.—¿A qué distancia se encontraba el carro del señor Hiram Gómez cuando ocurrió el choque en relación con el depósito de gasolina? R.—¿A qué distancia? P.—Sí, señor. R.—Frente a frente.''

Simón Carlos, perito-mecánico, declaró:

"P.—¿El golpe que recibió por el conocimiento que Ud. tiene, el golpe que recibió el Cadillac en qué lado del carro fué, izquierdo o derecho? R.—En la parte frente del carro, recibió todo el golpe sobre el bumper. P.—¿Del lado derecho o del lado izquierdo? R.—Casi todo parece en el mismo centro donde sale la punta del eje, va corriendo sobre el lado izquierdo, el golpe dado así, tropezó con el lado derecho, y el carro quedó torcido hacia el lado ése, me parece que se hicieron. . .''

Por otro lado, el demandante no estuvo justificado en salir del puesto de gasolina y tratar de tomar su derecha si vió venir al demandado que le ocupaba su derecha y caminando a una velocidad excesiva. El debió tomar todas las precauciones, ya que tenía que atravesar la carretera de tráfico público pará coger su derecha. Hubiese sido más pru-

dente haber esperado que pasara el Cadillac, aún en las condiciones ilegales en que marchaba.

Por todo lo expuesto, *debe confirmarse* la sentencia apelada en cuanto declara sin lugar la demanda, *y revocarse* en la parte que declaró con lugar la contrademanda, todo *sin especial condenación de costas.*